# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS JOHN HERNANDEZ-DENIZAC**, *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> **KIA MOTORS CORPORATION**, *et al.*, <br><br> Defendants. | Civil No. 15-2625 (GAG/BJM) |

## REPORT AND RECOMMENDATION

Luis John Hernandez-Denizac ("Hernandez-Denizac") and three of his family members brought this diversity tort action against Kia Motors Corporation ("Kia") and TRW Automotive US LLC ("TRW"), alleging that Hernandez-Denizac was seriously injured when his vehicle's allegedly defective air bags failed to deploy during a collision. Docket No. 15 ("Am. Compl."). TRW moved to dismiss the amended complaint for lack of personal jurisdiction, Docket Nos. 58, 65, and Hernandez-Denizac opposed. Docket No. 60. This matter was referred to me for a report and recommendation. Docket No. 62.

For the reasons set forth below, TRW's motion to dismiss should be **GRANTED**.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. *Daynard* v. *Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" *Sawtelle* v. *Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995) (quoting *Ticketmaster-N.Y., Inc.* v. *Alioto*, 26 F.3d 201, 204 (1st Cir. 1994)). When a defendant moves to dismiss per Federal Rule of Civil Procedure 12(b)(2), the plaintiff has "the burden of establishing that jurisdiction over the defendant lies in the forum state." *Baskin–Robbins Franchising LLC* v. *Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

To determine whether the "plaintiff has met this burden," the court "may choose from among several methods." *See Daynard*, 290 F.3d at 50–51. The "prima facie" method, which is the most conventional method, "requires no differential factfinding; rather, this method requires only that a plaintiff proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin–Robbins*, 825 F.3d at 34; *see also Boit* v. *Gar-Tec Prod., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (prima facie "showing of personal jurisdiction must be based on evidence of specific facts set forth in the record"); *Chlebda* v. *H.E. Fortna & Bro. Inc.*, 609 F.2d 1022, 1024 (1st Cir. 1979) ("plaintiff must go beyond the pleadings and make affirmative proof"). "For the purpose of examining the merits of such a jurisdictional proffer," the court considers "the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." *Baskin–Robbins*, 825 F.3d at 34. And the court may also consider "undisputed facts put forth by the defendant." *Id.*

## BACKGROUND

Hernandez-Denizac purchased a 2012 Kia Forte (the "vehicle") in Puerto Rico from Automarca Dealership ("Automarca"), and he was injured in July 2014 when the vehicle's air bags allegedly failed to deploy upon collision. Am. Compl. ¶¶ 8–12. After Hernandez-Denizac's vehicle was manufactured, Kia transferred the vehicle to Motorambar, Inc. ("Motorambar"), and Motorambar imported the vehicle to Puerto Rico for sale in the Puerto Rico market. Docket No. 58-3 at 17. TRW, a Delaware limited liability company headquartered in Michigan, does not conduct business in Puerto Rico or maintain a registered agent for service of process in Puerto Rico, nor has TRW previously done so. Docket No. 58-1 ¶¶ 6(a), 6(c). TRW is not authorized to do business in Puerto Rico, and TRW does not pay any taxes in Puerto Rico; does not file a tax return in Puerto Rico; and does not own, control, lease, possess, or maintain any real or personal property in Puerto Rico. *Id.* ¶¶ 6(b)–(e). And none of TRW's employees, management personnel, officers, or directors reside, or are located, in Puerto Rico. *Id.* ¶ 6(f).

TRW designed and calibrated the vehicle's airbag control unit ("ACU"). Docket Nos. 58-1 ¶ 4, 58-3 at 5–6. And TRW also designed and manufactured the vehicle's crash sensors. Docket No. 58-2 ¶¶ 11–12. The ACU and crash sensors were part of a multi-component air bag system installed on Hernandez-Denizac's vehicle. Docket No. 58-2 ¶¶ 4, 5, 11, 12. TRW designed and calibrated the vehicle's ACU in Michigan, with "possible support from Poland or India." Docket No. 58-2 ¶ 7. TRW then licensed the design and calibration of the ACU to the predecessor of MOBIS, a Korean company. *Id.* ¶ 7. Under this license agreement, MOBIS could manufacture the ACUs only in Korea, and could only sell the ACUs to Kia, Hyundai, or assemblers supplying Kia or Hyundai. *Id.* ¶¶ 7–9. The license agreement also required TRW to provide various support services to MOBIS, and TRW satisfied this requirement from Michigan, Illinois, or Korea. *Id.* ¶ 9. None of the ACUs were designed specifically for (or marketed to) the Puerto Rico market, and TRW's license agreement with MOBIS does not specifically identify Puerto Rico. *Id.* ¶¶ 10, 15.

TRW designed the vehicle's crash sensors in Michigan, and manufactured these crash sensors in Illinois. *Id.* ¶ 11. TRW sold these crash sensors to MOBIS, and TRW shipped these crash sensors to Korea. *Id.* ¶ 12. MOBIS then sold these crash sensors to Kia for installation in the vehicle, as well as other 2012 Kia Forte vehicles. *Id.* ¶ 12. TRW did not design or manufacture any aspect of the crash sensors specifically for the Puerto Rico market, nor did TRW specifically target the Puerto Rico market. *Id.* ¶¶ 13, 14. And TRW did not help with the sale of the crash sensors to Kia, or with the sale of the vehicle to Hernandez-Denizac. *Id.* ¶ 13. TRW has not established any customer support services in Puerto Rico for any issues that may arise with the ACUs or the crash sensors. *Id.* ¶ 16.

## DISCUSSION

TRW contends that exercising personal jurisdiction under the circumstances here violates due process because the court cannot assert either general or specific jurisdiction over this particular defendant. Hernandez-Denizac does not suggest that this court has general jurisdiction over TRW, but asserts that this court may exercise specific jurisdiction.

The "Fourteenth Amendment limits the personal jurisdiction of state courts." *Bristol-Myers Squibb Co.* v. *Superior Ct. of Cal.*, —— S. Ct. ——, No. 16-466, 2017 WL 2621322, at *6 (U.S. June 19, 2017). "The primary focus of" the Supreme Court's "personal jurisdiction inquiry is the defendant's relationship to the forum State." *Id.* There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)). Hernandez-Denizac does not suggest that this court has general jurisdiction over TRW, and so this court need only address whether TRW is subject to specific jurisdiction. *See Baskin–Robbins*, 825 F.3d at 35 (plaintiff "asserted only a claim of specific jurisdiction as the basis for the district court's jurisdiction," and First Circuit limited its "appraisal accordingly").

This case arises under the court's diversity jurisdiction, and thus this court "is the functional equivalent of a state court sitting in" Puerto Rico. *See Ticketmaster-N.Y.*, 26 F.3d at 204. A "federal court may assert specific jurisdiction over a defendant only if doing so comports with both the forum's long-arm statute and the Due Process Clause of the United States Constitution." *Carreras* v. *PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011). Because "Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause," this court need only address whether exercising specific jurisdiction over TRW comports with the due process requirements of the Federal Constitution. *See Carreras*, 660 F.3d at 552; *see also Negron-Torres* v. *Verizon Commc'ns, Inc.*, 478 F.3d 19, 24 (1st Cir. 2007). "This due process test is flexible and fact-specific, 'written more in shades of grey than in black and white.'" *Baskin–Robbins*, 825 F.3d at 35 (quoting *Phillips Exeter Acad.* v. *Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999)).

To exercise specific jurisdiction over a non-resident defendant, "the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden* v. *Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotations omitted). "The inquiry whether a forum

State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotations omitted). This inquiry "lends itself to a tripartite analysis." *Phillips Exeter*, 196 F.3d at 288. The court assesses "(1) whether the claim 'directly arise[s] out of, or relate[s] to, the defendant's forum state activities;' (2) whether the defendant's in-state contacts 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;' and (3) whether the exercise of jurisdiction is reasonable." *C.W. Downer & Co.* v. *Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014) (quoting *Daynard*, 290 F.3d at 60–61). "All three of these elements must be present for specific jurisdiction to attach." *Baskin–Robbins*, 825 F.3d at 35.

Even if this court assumes that Hernandez-Denizac can satisfy the first element of the tripartite analysis, *Rodriguez* v. *Fullerton Tires Corp.*, 115 F.3d 81 (1st Cir. 1997), aptly illustrates why Hernandez-Denizac cannot establish that TRW purposefully availed itself of the Puerto Rico market. *See Tice* v. *Taiwan Shin Yeh Enter. Co.*, 608 F. Supp. 2d 119, 124 (D. Me. 2009) (court assumed relatedness prong was satisfied where company could "be said to have engaged in activities in [forum state] by supplying an allegedly defective swing to Wal–Mart that Wal–Mart, in turn, sold in" the forum state—though the court ultimately did not exercise specific jurisdiction over the defendant because the defendant had not purposefully availed itself of the forum state). In *Rodriguez*, Ernesto Alers Rodriguez ("Rodriguez"), "a resident of Puerto Rico, purchased two sand track tires from a Puerto Rican dealer who had seen the tires advertised in a pamphlet distributed by" Fullerton Tires Corp. ("Fullerton") "and had ordered a supply of them." 115 F.3d at 82. "Some five years later, one of the purchased tires exploded while being inflated" and the "rim snapped, severely injuring Rodriguez." *Id.* Rodriguez sued Fullerton in this court, and Fullerton filed a third-party complaint against "the manufacturer of the rim used in Fullerton's sand track tires"—Custom Metal Spinning Corporation ("CMSC"). *Id.* at 82.

The third-party complaint and accompanying evidence limned the following factual scenario, which was not seriously disputed by the parties: CMSC sold rims to Fullerton Tires Corp. ("Fullerton") "knowing that Fullerton would incorporate them into tires and offer them for sale in distant markets." *Id.* at 84. "Fullerton, in turn, sent brochures to Puerto Rico among other places, advertised in national publications which were disseminated in the Commonwealth, and filled orders emanating from there." *Id.* at 84–85. CMSC "never conducted any business in Puerto Rico (either directly or through agents), never applied for or obtained authorization to do business there, and never owned, leased, or otherwise used an office or other property in the Commonwealth." *Id.* Under these circumstances, the "district court found that CMSC was not amenable to suit in Puerto Rico." *Id.*

Fullerton appealed, contending "that CMSC, by placing its product into the stream of interstate commerce, transacted business in Puerto Rico sufficient to satisfy the minimum contacts requirement." *Id.* Relying on Justice O'Connor's plurality opinion in *Asahi Metal Indus. Co.* v. *Superior Court of California*, 480 U.S. 102, 112 (1987), the First Circuit rejected Fullerton's theory—holding that "[e]ven assuming that CMSC had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico—and there [was] neither evidence nor allegation to that effect—this awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts." *Rodriguez*, 115 F.3d at 85. After rejecting Fullerton's theory and addressing other issues, the First Circuit affirmed the district court's decision. *Id.* at 86.

As in *Rodriguez*, TRW has never conducted business in Puerto Rico (either directly or through its agents) and TRW is not authorized to do business in Puerto Rico. *See id.* at 85. Nor does TRW have any real or personal property in Puerto Rico. What is more, TRW did not design the ACUs or crash sensors specifically for the Puerto Rico market. *See id.* Additionally, and unlike in *Rodriguez*, there is no evidence that MOBIS—the company that received the ACU design and crash sensors from TRW, and that ultimately relayed the fully manufactured products to Kia—targeted the Puerto Rico market with advertising materials

or other marketing efforts. *See id.* Under these circumstances, and as in *Rodriguez*, Hernandez-Denizac cannot show that TRW purposefully availed itself of the Puerto Rico market. *See id.* Thus, the court should find that it does not have specific jurisdiction over TRW.[1] *See, e.g.*, *Baskin–Robbins*, 825 F.3d at 35 ("All three of" the elements under the tripartite analysis "must be present for specific jurisdiction to attach").

To be sure, Hernandez-Denizac suggests that TRW Automotive US LLC—the defendant in this case—purposefully availed itself of the Puerto Rico market because two distinct entities—"TRW International, S.A." and "TRW, Inc."—were previously registered to do business in Puerto Rico. Docket No. 60 at 3–5. But "[t]here is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Escude Cruz* v. *Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980). And the "mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary." *Id.*; *see also De Castro* v. *Sanifill, Inc.*, 198 F.3d 282, 283–284 (1st Cir. 1999) (plaintiff proffered insufficient evidence to pierce the corporate veils of two subsidiaries and court could not exercise jurisdiction over a foreign parent corporation).

To "pierce the corporate veil, Puerto Rico law requires a proffer of 'strong and robust evidence . . . showing the parent to have that degree of control over the subsidiary

---

[1] Hernandez-Denizac was permitted to conduct jurisdictional discovery. Docket No. 47. TRW asserted that jurisdictional discovery ended, while Hernandez-Denizac claimed "discovery disputes [were still] being addressed by the parties." Docket Nos. 58, 60 ¶ 4. The court ordered that this matter be addressed "as necessary." Docket No. 62. Five months have passed since Hernandez-Denizac filed his opposition, and he has not sought an order compelling jurisdictional discovery. TRW filed a reply re-asserting that jurisdictional discovery ended, and Hernandez-Denizac did not dispute this assertion. Docket No. 65 at 6 ¶ C. Under these circumstances, and to the extent TRW did not ultimately give Hernandez-Denizac the "specific information" identified in his opposition, Hernandez-Denizac should not be heard to complain about lacking relevant evidence. *See Boit*, 967 F.2d at 681 (plaintiffs "failed to request any additional discovery to provide evidentiary support for their jurisdictional allegations," and this lack of diligence was held against plaintiffs). What is more, a plaintiff must "present facts to the court which show why jurisdiction would be found if discovery were permitted," *Negron-Torres*, 478 F.3d at 19–20, and Hernandez-Denizac's opposition failed to explain why personal jurisdiction would be found over TRW even if he had access to the "specific information" identified in his opposition. *See* Docket No. 60 ¶ 4.

as to render the latter a mere shell for the former.'" *Negron-Torres*, 478 F.3d at 27 (quoting *Escude Cruz*, 619 F.2d at 905). "In determining whether to disregard the corporate form, courts normally conduct a highly fact-specific inquiry, including, inter alia, consideration of the extent to which a subsidiary may have disregarded corporate formalities; the degree of control exercised by the parent over the day-to-day operations of the subsidiary; overlap in ownership, officers, directors, and personnel; and whether the subsidiary was adequately capitalized." *De Castro*, 198 F.3d at 284.

Hernandez-Denizac has made no effort whatsoever to apply the factors outlined in *De Castro*, nor has he made any effort to explain the precise relationship between TRW and the two other entities identified above. *See De Castro*, 198 F.3d at 284; *Negron-Torres*, 478 F.3d at 27. Against this backdrop, TRW has proffered its treasurer's affidavit, which states that TRW has scrupulously maintained a separate corporate existence from its subsidiaries, and which describes the ways in which TRW has done so. Docket No. 58-1 ¶¶ 7(a)–(t). Because Hernandez-Denizac has failed to proffer "strong and robust evidence" that would warrant disregarding TRW's corporate form, this court should not exercise personal jurisdiction over TRW under this theory. *See, e.g.*, *Negron-Torres*, 478 F.3d at 27.

Hernandez-Denizac next asserts that TRW purposefully availed itself of the Puerto Rico market because TRW's license agreement with MOBIS allowed MOBIS to "use" the MOBIS-manufactured ACUs (which TRW designed and calibrated) "anywhere in the world," and because this license agreement also allowed MOBIS to sell the licensed ACUs to "Hyundai and Kia anywhere in the world." Docket No. 58-2 ¶¶ 7(c), (d). But even if this evidence shows that TRW was aware that the stream of commerce would move its ACU design and crash sensors into Puerto Rico, the "First Circuit has rejected" this broad iteration of the stream-of-commerce theory. *See Terzano* v. *PFC*, 986 F. Supp. 706, 712 (D.P.R. 1997) (citing *Rodriguez*, 115 F.3d at 85; *Boit*, 967 F.2d at 681–83; *Dalmau Rodriguez* v. *Hughes Aircraft Co.*, 781 F.2d 9, 14–15 (1st Cir. 1986)).

Nor does Hernandez-Denizac cite any binding authority that would warrant departing from binding First Circuit law. *See AFTG-TG, LLC* v. *Nuvoton Tech. Corp.*, 689 F.3d 1358, 1362 (Fed. Cir. 2012) ("The Supreme Court has yet to reach a consensus on the proper articulation of the stream-of-commerce theory."). Indeed, even after the three separate opinions that divided the Supreme Court in *J. McIntyre Machinery, Ltd.* v. *Nicastro*, 564 U.S. 873 (2011), the broad iteration of the stream-of-commerce theory pressed by Hernandez-Denizac to establish specific jurisdiction over TRW has failed to persuade a majority of the Supreme Court.[2] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 541 (5th Cir. 2014) ("the law remains the same after *McIntyre*, and . . . circuit courts may continue to attempt to reconcile the Supreme Court's competing articulations of the stream of commerce test").

And while Hernandez-Denizac complains that the "mere fact that the sale of TRW's products and designs were done through" MOBIS "should not shield" TRW, the personal jurisdiction inquiry must necessarily focus on a "defendant's relationship to the forum State." *Bristol-Myers Squibb Co.*, 2017 WL 2621322, at *6. Indeed, because a "defendant's contacts with the forum state must be voluntary," the purposeful-availment showing cannot be "based on the unilateral actions of another party or a third person." *Nowak* v. *Tak How Investments, Ltd.*, 94 F.3d 708, 716 (1st Cir. 1996) (citing *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also Red Wing Shoe Co.* v. *Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (defendant "doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state]").

Because Hernandez-Denizac cannot show TRW's purposeful availment, this court need not address the third prong of the tripartite analysis. *See United Elec., Radio & Mach.*

---

[2]On the other hand, the Supreme Court unanimously rejected the stream-of-commerce "theory for general jurisdiction." *See Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1022 n.1 (9th Cir. 2017); *see also Daimler AG* v. *Bauman*, 134 S. Ct. 746, 757 (2014) ("Although the placement of a product into the stream of commerce 'may bolster an affiliation germane to *specific* jurisdiction,' . . . such contacts 'do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.'") (quoting *Goodyear*, 564 U.S. at 927).

*Workers of Am.* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 n.11 (1st Cir. 1992). This final prong, which concerns reasonableness, "implicates five factors" that the First Circuit has "dubbed the Gestalt factors." *Baskin–Robbins*, 825 F.3d at 40. But a plaintiff's "failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness." *Sawtelle*, 70 F.3d at 1394; *Pleasant St.* I, 960 F.2d at 1091 n.11 ("The Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled"). Thus, the court should find that it lacks personal jurisdiction over TRW and should dismiss the claims against TRW without prejudice. *See N. Am. Catholic Educ. Programming Found., Inc.* v. *Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) ("a dismissal for lack of personal jurisdiction is ordinarily without prejudice").

## CONCLUSION

For the foregoing reasons, TRW's motion to dismiss should be **GRANTED**, and the claims in the amended complaint against TRW Automotive US LLC should be **DISMISSED WITHOUT PREJUDICE**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas* v. *Arn*, 474 U.S. 140, 155 (1985); *Davet* v. *Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co.* v. *Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden* v. *Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 21st day of June 2017.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge