# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

LUIS JOHN HERNÁNDEZ DENIZAC, et al.,

Plaintiffs,

v.

KIA MOTORS CORPORATION,

Defendant.

CIVIL NO. 15-2625 (GAG)

**OPINION AND ORDER**

This case arises out of a one-vehicle accident in which the driver sustained significant head trauma and other injuries. Following the accident, Luis John Hernádez Denizac, Ly Ann Hernández López, Luis Hernández, and Nilsa Denizac (collectively "Plaintiffs") sued Kia Motors Corporation ("Kia" or "Defendant") in federal court asserting diversity jurisdiction and theories of product defect and failure to warn. (Docket No. 1).[1] Kia moved for summary judgment and Plaintiffs responded in opposition. (Docket Nos. 94; 98).

After disposing of preliminary matters involving Local Rule 56, the Court **GRANTS** Kia's motion for summary judgment at Docket No. 94.

**I.    Local Rule 56**

At the summary judgment stage, parties must follow Local Rule 56. Section (c) states that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." L. Cv. R. 56(c). This statement "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. In addition to allowing an

---

[1] Plaintiffs voluntarily dismissed their claims against all parties other than Kia. (Docket Nos. 10; 81).

opposing party to admit, deny, or qualify the moving party's facts, the opposing party may submit additional facts in a different section, provided that they are "supported by a record citation . . . ." Id. Section (e) provides that the Court "may disregard any statement of fact not supported by a specific citation to record material" and notes that the Court has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L. Cv. R. 56(e).

If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the opposing party's facts as admitted; the First Circuit has consistently held that litigants ignore Local Rule 56 "at their peril." Caban Hernandez v. Philip Morris USA, Inc., 486 F. 3d 1, 7 (1st Cir. 2007). This rule serves the enormously important purpose of "focusing a district court's attention on what is—and what is not—genuinely controverted." Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006).

A. Plaintiffs' Opposing Statement of Material Facts

In their opposing statement of material facts, Plaintiffs include thirteen paragraphs denying and qualifying some, but certainly not all, of Defendant's seventy-eight paragraphs of undisputed material facts. (Docket Nos. 95 at 1-18 ¶¶ 1-78; 99 at 1-3 ¶¶ 1-13). Although the paragraphs in Plaintiffs' statement of uncontested material facts ("PSUMF") are numbered 1-13, each paragraph references a different numbered paragraph in Defendant's statement of uncontested material facts ("DSUMF"). See e.g., Docket No. 99 at 1 ¶ 1. While it would have been better form to number each paragraph in relation to the paragraphs in DSUMF (in other words, paragraph one of PSUMF should reference paragraph one of DSUMF, rather than paragraph one of PSUMF referencing paragraph eight of DSUMF), Plaintiffs have at least managed to include a reference to the relevant paragraphs of DSUMF, and thus the Court will consider those thirteen paragraphs in PSUMF.

**Civil No. 15-2625 (GAG)**

What Plaintiffs have not done, however, is properly admit, deny, or qualify the remaining paragraphs in DSUMF (specifically paragraphs 1-7, 9-15, 17-20, 22-24, 28-31, 33-37, 41-46, 48-49, 51-74, 76, and 78). See Docket No. 99 at 1-3 ¶¶ 1-13. Because Plaintiffs failed to address any of those paragraphs, much less properly admit, deny, or qualify them, they are deemed admitted for the purposes of Defendant's motion for summary judgment. Caban Hernandez, 486 F. 3d at 7.

In addition, the first six paragraphs of Plaintiffs' additional statement of undisputed facts are not supported by proper citations. See Docket No. 99 at 3-4 ¶¶ 1-6. Rather than citing to the record, Plaintiffs improperly cite to websites not included in the record material. See L. Cv. R. 56(c) ("The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs *and supported by a record citation* . . . ." (emphasis added)). As such, the Court disregards these paragraphs. Plaintiffs argue that Defendant has similarly referred to a website link in its submissions (Docket No. 107 at 5); the difference is that Defendant's references to the website are not presented as record citation in their statement of uncontested facts. Had Defendant attempted to support its DSUMF with citations the website, the Court would be compelled to disregard them as well. As it stands, however, all facts asserted in DSUMF are supported by citations to the record.[2]

B. <u>Defendant's Reply to Plaintiffs' Opposing Statement of Material Facts</u>

In Defendant's reply to PSUMF, they replied, not only to Plaintiffs' separate section of additional facts, but also to Plaintiffs' responses to Defendant's original statement of uncontested material facts. (Docket No. 104).

Local Rule 56 section (d) governs this matter. "A party replying to the opposition to a

---

[2] The Court notes that if Plaintiffs had included said web pages as part of the record and cited to them it would not be necessary to disregard paragraphs 1-6 of Plaintiffs' additional statement of material uncontested facts. Adherence to the local rules is of paramount importance and failure to do so will continue to result in similar outcomes.

3

motion for summary judgment shall submit with its reply a separate, short, and concise statement of material facts *which shall be limited to any additional facts submitted by the opposing party*." L. Cv. R. 56(d) (emphasis added). The statement "shall admit, deny or qualify those additional facts . . . ." Id. The plain language of the rule indicates that the reply is only to be made with respect to the additional facts submitted by Plaintiffs. Defendant must limit its reply to the additional facts submitted by the opposing party. Id. If Defendant was able to deny or qualify Plaintiffs' denials and qualifications, the process would turn into a feedback loop. As such, the Court disregards paragraphs 1-78 at pages 1-23 of Defendant's reply statement of material facts at Docket No. 104.

## II. Relevant Factual Background

PSUMF and DSUMF, viewed in the light most favorable to the nonmovants, reveal the following relevant undisputed material facts:

On July 11, 2014, Plaintiff Luis John Hernández Denizac was driving his 2012 Kia Forte northbound on Road No. 1, from Caguas to San Juan. DSUMF ¶¶ 2-3. At approximately 2:20 a.m. he lost control of the vehicle, which swerved off the road and over a grass median. Id. ¶ 4. The vehicle then crossed a two lane marginal service road, hit a cement pedestal, and side-swiped a fence on the driver's side. Id. It came to a stop after the front left portion of the vehicle came into contact with a garbage dumpster. Id. Luis John does not have any recollection of the time immediately before, during, or after the accident, and there were no witnesses to the crash. Id. ¶¶ 13, 15.

Police arrived on the scene within approximately five minutes, by which point Luis John had already been removed from the vehicle and was receiving treatment in an ambulance. Id. ¶¶ 19-20. Plaintiffs allege that Luis John sustained a severe brain contusion as a result of the non-deployment of the vehicle's side curtain airbag. Id. ¶ 5. They further contend that if the airbag had

deployed, Luis John would not have suffered the "extensive, debilitating, and permanent life-changing injuries that he did." Id. ¶ 29. The airbag's non-deployment is a result, Plaintiffs aver, of Kia's defective manufacturing process and improper installation. Id. ¶ 30.

Upon commencement of this lawsuit, Plaintiffs retained Engineer Otto R. González Blanco ("Eng. González") as their only liability expert. Id. ¶ 35. A structural and hydraulics engineer, Eng. González spent 95% of his time over the last eight years reconstructing accidents. Id. ¶ 37. Eng. González has previously testified about accident reconstruction and has been recognized by the court as an expert in the same. PSMUF at 6 ¶ 27; Docket No. 104 at 29 ¶ 27. He does not, however, have any formal education in automotive design, engineering, or electronics, or in electrical or mechanical engineering. DSMUF ¶ 41. He is not an expert with respect to anything related to automotive manufacturing or design or airbag systems. Id. ¶¶ 42, 66. Eng. González does not have any medical education, nor has he taken courses in trauma or injury causation. Id. ¶ 43. He did not know the parameters for the circumstances when an airbag in a 2012 Kia Forte must deploy. Id. ¶ 45. He was unaware of the specifications for any portion of Kia's airbag system. Id. ¶ 46. He did not inspect the vehicle's airbag, nor did he perform any tests on it. Id. ¶ 65. He never deployed an airbag in a 2012 Kia Forte. Id. ¶ 74. Eng. González indicated that he would not provide expert testimony about the non-deployment of the airbag or whether the airbag was defective. Id. ¶ 64.

Eng. González testified that it was his opinion that if the airbag system didn't work, it was because it had a defect. Id. ¶ 67. He could not identify a specific component of the system that might have been defective, nor could he say which part of the airbag system did not work because he was not an expert in the construction or design of airbag systems. Id. Eng. González opined that the airbags should have deployed in the car, and because they did not, something was wrong. Id. ¶ 68. He did not know whether there was a defect, but he "believe[d] there must have been a defect"

because the airbags "should have deployed." Id. It was his opinion, based on his review of the medical records, that Plaintiff Luis John's cerebral contusion was caused by a lateral impact with the side of the car. Id. ¶ 69.

Two of Defendant's experts, Dr. Gennarelli and Eng. Rucoba, opined that given Luis John's height, the area where he hit his head was above the area that would have been covered by the airbag, had it deployed. PSUMF at 7 ¶¶ 36-37; Docket No. 104 at 31-32 ¶ 36-37. Specifically, Dr. Gennarelli stated that the area where Luis John's head struck the vehicle was "above that covered by a side curtain airbag if one were to have deployed in his crash." Eng. Rucoba stated that "[b]ased on his seated height, it's my opinion that [Luis John]'s head would strike the hard structural components above the area of deployment for the side curtain airbag. Therefore, even if the side curtain airbag had deployed his injuries would not have been mitigated." Id.

### III. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if it may reasonably be resolved in favor of either party at trial . . . and material if it possess[es] the capacity to sway the outcome of the litigation under the applicable law." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations and quotations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and

**Civil No. 15-2625 (GAG)**

material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "'conclusory allegations, improbable inferences, and unsupported speculation.'" Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**IV.  Discussion**

Under Puerto Rico law,[3] to succeed on a defective design product liability claim, Plaintiffs must be able to show that: "(1) [Defendant's] equipment has a defect, in any of its modalities; (2) the defect existed when the product left [Defendant's] control; (3) [Defendant] is in the business of selling this type of product; (4) the defect was the adequate cause of [Plaintiffs' injuries]; and

---

[3] The parties are diverse and the amount in controversy exceeds $75,000; thus the Court has diversity jurisdiction over the case. See 28 U.S.C. § 1332(a). State substantive law supplies the rules of decision for a federal court sitting in diversity jurisdiction, meaning Puerto Rico law applies here. Salvati v. Am. Ins. Co., 855 F.3d 40, 44 (1st Cir. 2017) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

7

**Civil No. 15-2625 (GAG)**

(5) [Plaintiff] use[d] the product in a manner that was reasonable and foreseeable by [Defendant]." Santos-Rodriguez v. Seastar Sols., 858 F.3d 695, 698 (1st Cir. 2017) (citation and internal quotation omitted).

It is important to note that to succeed on a claim, Plaintiffs must be able to establish each and every element. If they fail to show even one, they cannot succeed on the claim, even if other elements are vigorously contested. See JOSEPH W. GLANNON, THE GLANNON GUIDE TO CIVIL PROCEDURE 438-39 (2003) (explaining that for a defendant to succeed on a motion for summary judgment, there need only be one element of a claim for which there is no genuine dispute as to a material fact). Here, it is not necessary to consider any element besides that of whether a defect existed; Plaintiffs have not presented evidence to show a defect in the manufacture or design of the airbag and thus they cannot succeed on their defective design or manufacture claim.

### A. Manufacturing Defect Claim

To succeed on a manufacturing defect claim, under Puerto Rico law Plaintiffs

> must prove four essential elements; viz. (1) the [Kia] air bag had a "manufacturing defect" of which [Luis John] was unaware, (2) the defect made the air bag system "unsafe," (3) the usage to which the air bag was put by [Luis John] was reasonably foreseeable by [Kia], and (4) the defect proximately caused injury to [Luis John].

Perez-Trujillo v. Volvo Car Corp. (Sweden), 137 F.3d 50, 53 (1st Cir. 1998). In instances like this case, where a technical analysis must be made regarding airbag deployment or non-deployment, the First Circuit is clear that expert testimony is required. Quintana-Ruiz v. Hyundai Motor Corp., 303 F.3d 62, 77 (1st Cir. 2002) ("[W]hen the ultimate issue of design defect calls for a careful assessment of feasibility, practicality, risk and benefit, the case should not be resolved simply on the basis of ordinary consumer expectations." (citation and internal quotation omitted)).

8

Plaintiffs here contend that a defect in the airbag was responsible for Luis John's injuries. Specifically, they state that "[h]ad the airbags deployed, Luis John would not have suffered the extensive, debilitating, and permanent life-changing injuries he did." (Docket No. 15 at 10 ¶ 18). In support of this, Plaintiffs spend a significant amount of energy pointing to alleged flaws in Defendant's experts' analysis of the crash data, but do not themselves present any expert evidence to show that the there was a defect in the design or manufacture of the airbag, other than to conclude that because the airbag did not deploy, a defect must have existed.

Plaintiffs' only proffered expert witness, Eng. González, is not an expert in the areas necessary for Plaintiffs to succeed in their claim. Although "[e]xpert witnesses are 'permitted wide latitude to offer opinions,'" it is not the case that such latitude is without limit. Prado Alvarez v. R.J. Reynolds Tobacco Co., 405 F.3d 36, 40 (1st Cir. 2005) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993) (citing FED. R. EVID. 701, 702, 703)). Because "'[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it,'" the expert testifying must have "achieved a meaningful threshold of experience" in the matter about which she or he is testifying. Id. (alteration in original) (quoting Daubert, 509 U.S. at 595).

Defendant contends that while Eng. González has performed many accident reconstructions, he has only served as an expert witness in two vehicle product liability cases over the course of his career, neither of which involve airbag performance. DSUMF ¶¶ 38-39. Defendant further asserts that "Eng. González has never acted as an expert in automotive design, has never provided testimony in court with respect to defects in automobiles and has not been recognized by any court as an expert in automotive design or automotive engineering." Id. ¶ 40. Although Plaintiffs object to the fact that Defendant does not include information indicating that Eng. González "is a well-credentialed expert in accident reconstruction," they do not aver that Eng.

9

**Civil No. 15-2625 (GAG)**

González has any expertise or experience testifying about automotive airbag design or engineering. PSUMF at 3 ¶ 9. Additionally, Defendant states that Eng. González is not familiar with the Federal Motor Vehicle Safety Standards that govern performance of air bag supplemental restraint systems. DSUMF ¶ 47. In their response to this statement, Plaintiffs explain what the standards require, but do not contest the fact that Eng. González is not familiar with them. PSUMF at 3 ¶ 10.

During Eng. González's deposition, Defendant's counsel asked Eng. González, "The way I understand it is that you are not here to testify about the cause of the airbag non-deployment. Is that correct?" Eng. González responded "That is correct." Docket No. 95-3 at 288 ¶¶ 12-16. When asked "You're not an expert in airbag electronics or airbag systems, so you can't tell us what went wrong, correct?" Eng. González answered "That's what I've testified." Id. at 291 ¶¶ 22-25. Eng. González acknowledged he was not an expert in airbag system design, warnings, instructions, or manufacturing. Id. at 292 ¶¶ 4-14. He explicitly stated "I've testified that I'm not an expert in airbag systems." Id. at 293 ¶¶ 24-25. Even if he did have the expertise, Eng. González acknowledged that he had not performed an analysis of the airbag electronics or system. Id. at 291-92.

In sum, Plaintiffs only expert does not have expertise or formal education in the areas of airbag deployment, automotive engineering, design, or electronics, nor has he been recognized by any court as an expert in these areas. DSUMF ¶¶ 40-44. Further, Plaintiffs explicitly state that "[i]t does not take an expert to know that" inflation of the side curtain airbag would have put space between Luis John's head and the roof rail of the car. (Docket No. 98 at 13). They argue that the consumer expectation doctrine is applicable here and aver that a plaintiff may show defective design without an expert through a demonstration "'that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.'"

Id. at 16 (quoting Barker v. Lull Eng'g Co., 20 Cal. 3d 413, 418 (1978). Unfortunately, this is not the case here.[4]

Rather,

> [P]laintiffs' real argument is that the [airbag] failed, and that this is sufficient evidence of a design defect. This is precisely the type of showing rejected in Rodríguez-Méndez, where the plaintiffs' only evidence was that something was wrong—he had metal in his eye. 195 D.P.R. 769, translation at 23. Here, the plaintiffs' only showing is that something was [potentially] wrong—the [airbag may have] failed.

Santos-Rodriguez, 858 F.3d at 699. As was the case in Santos-Rodriguez, so it is here: Plaintiffs have failed to "present evidence that [Defendant's] design of the [airbag] was defective," and rely instead on the fact that the airbag did not deploy to serve as indication that a defect existed in the design or manufacture. Id. Plaintiffs only expert cannot—and indeed explicitly stated that he would not—provide information about why the airbag did not deploy other than to say that because it did not, that was indication of a defect. Without evidence, it is not possible for Plaintiffs to prove a defect in the design or manufacture of the vehicle; Plaintiffs' claim relies on "'conclusory allegations'" and "'unsupported speculation.'" Forestier Fradera, 440 F.3d at 21 (quoting Benoit, 331 F.3d at 173). There is no genuine issue of material fact with respect to the issue of design or manufacturing defect; Plaintiffs cannot, based on their proffered evidence, prove that any defect existed. Thus, summary judgment is appropriate as to the design and manufacturing defect claim.

### B. Failure to Warn Claim

With respect to Plaintiffs' failure to warn claim, Plaintiff must show

> (1) the manufacturer knew, or should have known of the risk inherent in the product; (2) there were no warnings or instructions, or those provided were inadequate; (3) the absence of warnings made the product inherently dangerous; [and] (4) the absence of adequate warnings or instructions was the proximate cause of plaintiff's injury.

---

[4] This is not a situation where "direct eyewitness observation of a product malfunction" renders expert testimony unnecessary. See Perez-Trujillo, 137 F.3d at 55. Indeed, the only person capable of providing eyewitness testimony of what occurred during in the accident is Luis John, who has no recollection of anything that happened just before or during the crash. DSUMF ¶¶ 13, 15.

Santos-Rodriguez, 858 F.3d at 697 (alterations in original) (internal quotations and citations omitted).

Plaintiffs here explicitly do not argue that Defendant failed to comply with the federal laws requiring warnings for the vehicle. (Docket No. 107 at 4). Instead, Plaintiffs aver that "if Luis John was too tall to be protected by the car's airbags—as asserted by Kia's experts Rucoba and Gennarelli—then he should have been afforded some sort of warning in order to make an informed decision at the moment of purchase." Id. In support of this argument, Plaintiffs offer a statement under penalty of perjury by Luis Carlos Hernandez Gonzalez, Luis John's father. (Docket No. 107-1). According to the statement, Luis Carlos bought the car for Luis John who was 6'2" tall, who was with him at the time of purchase, and who the salesperson knew would be driving the car. Id. Among other things, Luis Carlos indicated that the safety features of the car were an important factor in his decision to purchase the car for his son. Id. No one informed the men that Luis John was too tall to be protected by the side curtain airbags. Id.

Two of Defendant's experts opined that given Luis John's height, the area where he hit his head was above the area that would have been covered by the airbag, had it deployed. PSUMF at 7 ¶¶ 36-37; Docket No. 104 at 31-32 ¶ 36-37. Specifically, Dr. Gennarelli stated that the area where Luis John's head struck the car was "above that covered by a side curtain airbag if one were to have deployed in his crash," and Eng. Rucoba stated "[b]ased on his seated height, it's my opinion that [Luis John]'s head would strike the hard structural components above the area of deployment for the side curtain airbag. Therefore, even if the side curtain airbag had deployed his injuries would not have been mitigated." Id.

Even considering all of the above in the light most favorable to the nonmovants, Plaintiffs have failed to adduce evidence that the absence of warnings made the product inherently

**Civil No. 15-2625 (GAG)**

dangerous. As discussed at page 11 of this opinion, a product's mere failure to function, in and of itself, is insufficient to prove a design defect. Santos Rodriguez, 858 F.3d at 699. Likewise, such failure to function is also per se insufficient to prove a product's inherent dangerousness so as to require additional warnings. Without an expert that is able to testify about airbag deployment, system design, warnings, instructions, or manufacturing, Plaintiffs are unable to present the necessary evidence to produce a genuine issue of material fact as to inherent dangerousness vis-à-vis Luis John's height. As such, summary judgment is appropriate.

**V. Conclusion**

For the reasons stated above, Defendant's motion for summary judgment at Docket No. 94 is **GRANTED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 17th day of August, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge